IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KIMBERLY ZISSETTE WHEELER,        )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        1:17CV1074
                                  )
NANCY A. BERRYHILL,               )
Acting Commissioner of Social     )
Security,                         )
                                  )
                Defendant.        )


MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Kimberly Zissette Wheeler, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entries 8, 16 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 17; see also Docket Entry 13 (Plaintiff's Brief); Docket Entry 18 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI. (Tr. 197-203, 204-09.) Upon denial of those applications initially (Tr. 68-87, 110-15) and on reconsideration (Tr. 88-109, 120-37), Plaintiff requested a

hearing de novo before an Administrative Law Judge ("ALJ")
(Tr. 138-39). Plaintiff, her attorney, and a vocational expert
("VE") attended the hearing. (Tr. 37-67.) The ALJ subsequently
ruled that Plaintiff did not qualify as disabled under the Act.
(Tr. 20-31.) The Appeals Council thereafter denied Plaintiff's
request for review (Tr. 1-7, 195-96, 306), thereby making the ALJ's
ruling the Commissioner's final decision for purposes of judicial
review.

In rendering that disability determination, the ALJ made the
following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of
the [] Act through December 31, 2018.

2. [Plaintiff] has not engaged in substantial gainful
activity since March 25, 2014, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments:
pseudoseizures.[1]

. . .

4. [Plaintiff] does not have an impairment or
combination of impairments that meets or medically equals
the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1.

. . .

---

[1] "According to Dorland's Illustrated Medical Dictionary, psychogenic seizures
are also called pseudoseizures and are defined as being 'attack[s] resembling an
epileptic seizure but having purely psychological causes; [they] lack the
electroencephalographic characteristics of epilepsy and the patient may be able
to stop [them] by an act of will.'" Coleman v. Astrue, No. 3:05-0389, 2010 WL
28567, at *12 (M.D. Tenn. Jan. 5, 2010) (unpublished) (quoting Dorland's
Illustrated Medical Dictionary 1536, 1676 (30th ed. 2003)).

5.   .  .  . [Plaintiff] has the residual functional
capacity to perform light work . . . except she can
frequently climb ramps or stairs and never climb ladders,
ropes, or scaffolds.  She can occasionally balance.
[Plaintiff] can frequently handle with the left upper
extremity.  She must avoid all exposure to unprotected
heights and hazardous machinery.

.  .  .

6.   [Plaintiff] is capable of performing past relevant
work as a cashier and short-order cook.  This work does
not require the performance of work-related activities
precluded by [Plaintiff's] residual functional capacity.

.  .  .

7.   [Plaintiff] has not been under a disability, as
defined in the [] Act, from March 25, 2014, through the
date of this decision.

(Tr. 25-31 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
the Court "must uphold the factual findings of the ALJ if they are

supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and

was reached based upon a correct application of the relevant law."
Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that
"[a] claimant for disability benefits bears the burden of proving
a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981),
and that, in this context, "disability" means the "'inability to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be expected
to last for a continuous period of not less than 12 months,'" id.
(quoting 42 U.S.C. § 423(d)(1)(A)).[2]  "To regularize the
adjudicative process, the Social Security Administration [('SSA')]
has . . . detailed regulations incorporating longstanding medical-
vocational evaluation policies that take into account a claimant's
age, education, and work experience in addition to [the claimant's]
medical condition."  Id.  "These regulations establish a
'sequential evaluation process' to determine whether a claimant is
disabled."  Id.

This sequential evaluation process ("SEP") has up to five
steps:  "The claimant (1) must not be engaged in 'substantial
gainful activity,' i.e., currently working; and (2) must have a

---

[2]  The Act "comprises two disability benefits programs.  [DIB] provides benefits
to disabled persons who have contributed to the program while employed.  [SSI]
provides benefits to indigent disabled persons.  The statutory definitions and
the regulations . . . for determining disability governing these two programs
are, in all aspects relevant here, substantively identical."  Craig, 76 F.3d at
589 n.1 (internal citations omitted).

'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a
(continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[5]

## B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

---

[4] (...continued)
"physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[5]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

1) "[t]he Appeals Council's failure to consider additional opinion evidence warrants reversal or remand for rehearing" (Docket Entry 13 at 3 (bold font and single-spacing omitted)); and

2) "[t]he ALJ's failure to address whether [Plaintiff] meets Listing 12.07 warrants reversal or remand" (id. at 5 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 18 at 4-11.)

### 1. New Evidence Submitted to the Appeals Council

In Plaintiff's first assignment of error, she alleges that "[t]he Appeals Council's failure to consider additional opinion evidence warrants reversal or remand for rehearing." (Docket Entry 13 at 3 (emphasis added) (bold font and single-spacing omitted).) In particular, Plaintiff faults the Appeals Council for finding that Plaintiff's new evidence "'d[id] not show a reasonable probability that it would change the outcome of the decision'" and, therefore, "'not consider[ing] and exhibit[ing] this evidence.'" (Id. at 4 (quoting Tr. 2) (emphasis added) (bold font omitted).) According to Plaintiff, "[t]he Appeals Council could deny [Plaintiff's] request for review because [it] found the evidence considered does not show a reasonable probability that the additional evidence would change the outcome of the decision" (id. (emphasis added) (citing 20 C.F.R. § 404.970(a)(5))), but "the Appeals Council could not . . . fail to even consider [Plaintiff's]

8

new evidence because it does not show a reasonable probability that it would change the outcome of the decision" (id. (citing 20 C.F.R. § 404.970(b))).  Plaintiff further maintains that, "[s]ince the Appeals Council does not further discuss [its] decision or even exhibit the records, we are left to wonder how the Appeals Council came to [its] decision."  (Id. at 4-5 (citing Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).)  Plaintiff's contentions do not warrant relief.

The regulatory provisions governing the Appeals Council's consideration of new evidence, 20 C.F.R. §§ 404.970, 416.1470, changed in 2017.  The prior version of those regulations, in effect until January 16, 2017, provided as follows:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision.  The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision.  It will then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. §§ 404.970(b), 416.1470(b) (1987).

The new versions, effective January 17, 2017, with compliance by claimants required by May 1, 2017, see Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90987-01, 90987, 2016 WL 7242991 (Dec. 16, 2016), provide as follows:

(a) The Appeals Council will review a case if—

.   .   .

(5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

(b) The Appeals Council will only <u>consider</u> additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 404.935 because:

    (1) Our action misled you;

    (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

    (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.

20 C.F.R. §§ 404.970, 416.1470 (2017).[6]  Thus, the new regulations

---

[6] In conjunction with the above-described regulatory change, the SSA amended its internal procedures manual to clarify when evidence submitted to the Appeals Council qualifies as new, material, and related to the period on or before the ALJ's decision.  <u>See Hearings, Appeals, and Litigation Law Manual</u> ("HALLEX"), § I-3-3-6B.2 ("Additional Evidence") (May 1, 2017), available at https://www.ssa.gov/OP_home/hallex/I-03/I-3-3-6.html. According to the HALLEX, evidence submitted to the Appeals Council is:

- "new if it is not part of the [administrative record] as of the date of the [ALJ's] decision";

- "material if it is relevant, i.e., involves or is directly related to issues adjudicated by the ALJ"; and

- "relate[d] to the period on or before the date of the hearing decision if the evidence is dated on or before the date of the hearing decision, or . . . post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision."

HALLEX, § I-3-3-6B.2.

add two requirements to a claimant's burden to have new evidence <u>considered</u> by the Appeals Council in connection with a request for review: (1) a requirement that a claimant demonstrate good cause for the failure to submit the evidence in question at least five days prior to the ALJ's decision pursuant to 20 C.F.R. §§ 404.953, 416.1453; and (2) a requirement to show a reasonable probability of a different outcome.[7]

Plaintiff's counsel requested review with the Appeals Council on February 17, 2017 (Tr. 195-96, 306), and provided the new evidence in question to the Appeals Council (see Tr. 306, 617-61). On March 24, 2017, the Appeals Council provided Plaintiff with advanced notice of the regulatory change and an opportunity to submit additional evidence and argument directed at demonstrating a reasonable probability of a different outcome. (See Tr. 9-10.) In that notice, the Appeals Council expressly recognized that Plaintiff could not retroactively comply with the new requirement that, absent good cause, claimants must submit evidence at least five days before the ALJ's hearing, and waived the requirement that Plaintiff demonstrate good cause. (See Tr. 10.) The record does

---

[7] Long-standing Fourth Circuit law defined "material" as a reasonable possibility the new evidence would have changed the outcome of the case. See Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011); Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). Thus, the new versions of Sections 404.970 and 416.1470 increase a claimant's burden from showing a reasonable possibility to a reasonable probability, and make the obligation to show a reasonable probability of a different outcome an additional requirement to showing materiality.

not reflect that Plaintiff submitted additional argument or evidence after that notice.

The Appeals Council denied Plaintiff's request for review on September 23, 2017, remarking as follows:

> [Plaintiff] submitted a letter from Christopher Connelly, M.D. dated January 3, 2017 (1 page); a medical opinion from Christopher Connelly dated March 10, 2017 (3 pages); hospital records from Steve Gaskin, M.D. dated October 7, 2016 (5 pages); progress notes from Daymark Recovery Services dated November 2, 2016 (2 pages); hospital records from CHS Harrisburg Health Pavilion dated October 15, 2016 through October 16, 2016 (18 pages); hospital records from CHS Neurosciences Institute Northeast dated October 21, 2016 (20 pages); and a notice of denial from Cabarrus County DSS dated October 21, 2016 (1 page). <u>We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence</u>.

(Tr. 2 (emphasis added).) Consistent with that statement, the Appeals Council exhibited Plaintiff's request for review and supporting brief, but did not incorporate the new evidence into the administrative record (<u>see</u> Tr. 5, 6), and further advised Plaintiff that, "[i]f [she] want[ed the Commissioner] to consider whether [Plaintiff] w[as] disabled after December 21, 2016, [she] need[ed] to apply [for benefits] again" (Tr. 2).

Significantly, Plaintiff does not argue that her new evidence qualifies as new, material, and related to the time period on or before the ALJ's decision, that it raises a reasonable probability of a different outcome, or that the Appeals Council erred by finding the new evidence failed to raise such a reasonably probability. (<u>See</u> Docket Entry 13 at 3-5.) Rather, Plaintiff

maintains that the Appeals Council erred by making its reasonable probability finding without first "considering" the new evidence. (See id. at 4-5; see also id. at 4 ("[I]f the Appeals Council did not consider [Plaintiff's] new evidence, how d[id] [it] know that [the new evidence] does not show a reasonable probability that it would change the outcome of the decision?" (emphasis added)).)

Plaintiff's argument fails because it relies on an unreasonable interpretation of the Appeals Council's statement that it "did not consider and exhibit" Plaintiff's new evidence (Tr. 2 (emphasis added)). According to Plaintiff's interpretation, the Appeals Council's statement means that it did not take into account in any fashion the substance of Plaintiff's new evidence before finding it failed to raise a reasonable probability of a different outcome. (See Docket Entry 13 at 3-5.) However, that interpretation does not make sense in light of the Appeals Council's procedures regarding requests for review. Those procedures require the Appeals Council to "evaluate the entire record along with the additional evidence to determine whether there is a reasonable probability that the additional evidence will change the outcome of the decision." HALLEX § I-3-3-6B.3. Furthermore, those procedures make clear that the Appeals Council's statement that it "did not consider" Plaintiff's new evidence (Tr. 2) meant that the Appeals Council did not consider that evidence as a basis for granting Plaintiff's request for review:

> Generally, the [Appeals Council] will only <u>consider</u>
> evidence <u>as a basis for granting review</u> if the claimant
> meets one of the good cause exceptions . . .; the
> additional evidence is new, material, and relates to the
> period on or before the date of the hearing decision; and
> there is a reasonable probability that the additional
> evidence will change the outcome of the decision.

HALLEX § I-3-3-6B (emphasis added). Here, the Appeals Council included a detailed list of all of Plaintiff's new evidence, indicated that it did not find that such evidence raised a reasonable probability of a different outcome (which signals that the Appeals Council evaluated the entire record along with Plaintiff's new evidence), did not consider that evidence as a basis for granting review, and declined to exhibit that evidence. (See Tr. 2.)  Plaintiff has thus not shown that the Appeals Council failed to comply with its own regulations and policies in denying Plaintiff's request for review.

In sum, Plaintiff's first assignment of error fails as a matter of law.

## 2. Listing 12.07

In Plaintiff's second and final issue on review, she asserts that "[t]he ALJ's failure to address whether [Plaintiff] meets Listing 12.07 warrants reversal or remand."  (Docket Entry 13 at 5 (bold font and single-spacing omitted).)  In particular, Plaintiff contends that, despite the ALJ's finding that Plaintiff suffered from severe pseudoseizures (see Tr. 25), "[t]he ALJ failed to address . . . whether [Plaintiff] met Listing 12.07 for 'Somatoform

Disorders,' despite a 'fair amount of evidence' that suggested she met the Listing" (Docket Entry 13 at 6 (quoting <u>Radford</u>, 734 F.3d at 295)).  According to Plaintiff, "[t]here is no evidence that the ALJ considered Listing 12.07 at all," and Plaintiff's "'medical record is not so one-sided that one could clearly decide, without analysis,' that Listing 12.07 was not implicated."  (<u>Id.</u> at 8 (quoting <u>Brown v. Colvin</u>, 639 F. App'x 921, 923 (4th Cir. 2016).) Further, Plaintiff contends that, "[t]hough the ALJ considered the 'paragraph B' criteria in evaluating [Plaintiff's] conversion disorder, depressive disorder, post-traumatic stress disorder [('PTSD')] and anxiety, this [C]ourt is left to wonder whether the ALJ took [Plaintiff's] pseudoseizures into account, an omission which precludes 'meaningful review.'" (<u>Id.</u> (referencing Tr. 26) (quoting <u>Fox v. Colvin</u>, 632 F. App'x 750, 755 (4th Cir. 2015)).) Those assertions lack merit.

"Under Step 3, the [SSA's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in [A]ppendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" <u>Radford</u>, 734 F.3d at 293 (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted).  "The listings set out at 20 CFR [P]t. 404, [S]ubpt. P, App['x] 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect.  Each impairment is

defined in terms of several specific medical signs, symptoms, or laboratory test results." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted).  "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." <u>Bennett</u>, 917 F.2d at 160 (citing <u>Zebley</u>, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); <u>see also</u> <u>Zebley</u>, 493 U.S. at 530 ("An impairment that manifests only some of th[e] criteria [in a listing], no matter how severely, does not qualify.").

An ALJ must identify the relevant listed impairments and compare them to a claimant's symptoms only where "there is <u>ample evidence</u> in the record to support a determination that [a claimant's impairment] met or equalled [sic] one of the [] impairments listed in Appendix 1 . . . ." <u>Cook v. Heckler</u>, 783 F.2d 1168, 1172 (4th Cir. 1986) (emphasis added); <u>see also</u> <u>Russell v. Chater</u>, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) ("<u>Cook</u> . . . does not establish an inflexible rule requiring an exhaustive point-by-point discussion [of listings] in all cases."); <u>Ollice v. Colvin</u>, No. 1:15CV927, 2016 WL 7046807, at *3 (M.D.N.C. Dec. 2, 2016) (unpublished) (Peake, M.J.) ("[A]n ALJ is not required to explicitly identify and discuss every possible listing; however, he must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination where

16

the 'medical record includes a <u>fair amount of evidence</u>' that a claimant's impairment meets a disability listing." (emphasis added) (quoting <u>Radford</u>, 734 F.3d at 295)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Jan. 10, 2017) (Osteen, Jr., C.J.).

Here, as Plaintiff argues (<u>see</u> Docket Entry 13 at 8), the ALJ did not specifically mention Listing 12.07 (or any other listings) in his step three finding:

> [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> In reaching this conclusion, the [ALJ] has reviewed [Plaintiff's] impairments using the Listing of Impairments contained in 20 CFR Part 404, Appendix 1 to Subpart P. The current evidence, however, fails to establish an impairment that is accompanied by signs that are reflective of listing-level severity. Also, none of [Plaintiff's] treating or examining physicians of record has reported any of the necessary clinical, laboratory, or radiographic findings specified therein.

(Tr. 27 (bold font and internal citations omitted).) However, the ALJ had already considered whether any of Plaintiff's mental impairments met a listing at step two of the SEP, in connection with the ALJ's determination of whether Plaintiff suffered from any severe impairments:

> [Plaintiff's] medically determinable mental impairments of conversion disorder, depressive disorder, [PTSD] and anxiety, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere.
>
> <u>In making this finding, the [ALJ] has considered the four broad areas set out</u> in the disability regulations for

17

> evaluating mental disorders and <u>in section 12.00C of the Listing of Impairments</u>. These four broad functional areas are known as 'paragraph B' criteria.

(Tr. 26 (emphasis added).)

The ALJ's above quoted step two analysis did not mention any specific listings that corresponded with Plaintiff's conversion disorder, depressive disorder, PTSD, and anxiety. (<u>Id.</u>) However, the applicable listings (Listing 12.04 (Affective Disorders), Listing 12.06 (Anxiety Related Disorders), and Listing 12.07 (Somatoform Disorders)) all contain the same paragraph B criteria, <u>see</u> 20 C.F.R., Pt. 404, Subpt. P, App'x 1, §§ 12.04B, 12.06B, 12.07B, and thus the ALJ appears to have given Plaintiff the benefit of the doubt and assumed that Plaintiff's mental impairments met the paragraph A criteria of their respective listings and proceeded to evaluate the paragraph B criteria (<u>see</u> Tr. 26).[8] Accordingly, Plaintiff's argument ultimately turns on whether substantial evidence supported the ALJ's analysis of the paragraph B criteria.

In order to meet the paragraph B criteria of the applicable listings, Plaintiff must show that her mental impairments "[r]esult[] in at least <u>two</u> of the following: [m]arked restriction

---

[8] As relevant to this case, paragraph A of Listing 12.07 requires evidence of "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms" and medical documentation of "[p]ersistent nonorganic disturbance of one of the following: [v]ision; or [s]peech; or [h]earing; or [u]se of a limb; or [m]ovement and its control (e.g., coordination disturbance, <u>psychogenic seizures</u>, akinesia, dyskinesia[)]; or [s]ensation (e.g., diminished or heightened)." 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.07A (emphasis added) (subsection lettering omitted).

18

in activities of daily living; or [m]arked difficulties in maintaining social functioning; or [m]arked difficulties in maintaining concentration, persistence, or pace; or [r]epeated episodes of decompensation, each of extended duration." See 20 C.F.R., Pt. 404, Subpt. P, App'x 1, §§ 12.04B, 12.06B, 12.07B (emphasis added) (subsection lettering omitted). The ALJ evaluated the paragraph B criteria as follows:

> The first functional area is activities of daily living. In this area, [Plaintiff] has mild limitation. [Plaintiff] reports difficulty driving and that someone has to be around her, but she relates this primarily to her pseudoseizures. [Plaintiff] states that she has some stress in her life but she thinks she manages it well. She has even reported being able to handle her activities of daily living without assistance. Given such evidence, [Plaintiff] is only mildly limited in this functional area.

> The next functional area is social functioning. In this area, [Plaintiff] has mild limitation. [Plaintiff] has reported residual symptoms from her past abusive relationship, but did not report difficulty getting along with others. While she testified to difficulty getting along with others, her demeanor has been average, she has had good eye contact, and has had mood that was euthymic and within normal limits. Given such evidence, [Plaintiff] has no more than mild limitations in this functional area.

> The third functional area is concentration, persistence or pace. In this area, [Plaintiff] has mild limitation. [Plaintiff] reports difficulty remembering, concentrating, understanding, and completing tasks. Yet on examination she has had logical thought process and no impairment of memory or orientation. Even when she has raised her purported memory issues, her provider noted that her memory and cognition appeared grossly intact. [Plaintiff] reported being able to handle her own financial matters as a strength, suggesting more functional ability in this area than alleged. Given the

evidence of record, [Plaintiff] is only mildly limited in this functional area.

The fourth functional area is episodes of decompensation. In this area, [Plaintiff] has experienced no episodes of decompensation which have been of extended duration.

. . .

Although [Plaintiff] alleges that mental impairments cause significant functional limitations, she has reported riding motorcycles with her boyfriend, regularly visiting her grandchildren, being able to handle activities of daily living without assistance, having a strength in handling her own financial matters, enjoying time with her family, and managing stress well. This evidence suggests that [Plaintiff's] mental impairments are well managed with treatment and that they do not cause significant work-related limitations. The relatively unremarkable mental status examinations also undermine [Plaintiff's] allegations of significant work-related limitations due to her mental impairments. Although [Plaintiff] testified she does not like being around other people, she has consistently had unremarkable symptoms on mental examination. Furthermore, she testified that she carries a firearm with her in case she needs it, suggesting that she retains sufficient concentration, persistence, or pace to use a firearm. This suggests greater functional ability than she alleges.

(Tr. 26-27 (internal citations omitted).)

As noted above, Plaintiff acknowledges that "the ALJ considered the 'paragraph B' criteria in evaluating [Plaintiff's] conversion disorder, depressive disorder, [PTSD] and anxiety" (Docket Entry 13 at 8), but argues that "the ALJ failed to address how [Plaintiff's] pseudoseizures affected these broad functional areas or whether, given her pseudoseizures, [Plaintiff's] 'paragraph B' criteria would have been rated differently" (id. at 8 n.2). In that regard, Plaintiff notes that, despite the ALJ's

finding of mild limitation in daily activities, "the ALJ fail[ed] to address that [Plaintiff] has not driven since 2014 due to a seizure, a restriction that also affects her ability to accomplish activities of daily living" (id. (citing Tr. 49)) and that Plaintiff "also reported to clinicians at Daymark in 2016 that she is unable to shower by herself and will not stay home by herself because of her seizures" (id. (citing Tr. 586)).

Two aspects of the ALJ's decision lend credence to Plaintiff's argument that the ALJ did not consider Plaintiff's pseudoseizures in his evaluation of the paragraph B criteria.  First, the ALJ found Plaintiff's pseudoseizures a severe impairment at step two, but Plaintiff's other mental impairments non-severe, and did not include pseudoseizures in the list of impairments he analyzed under the paragraph B criteria.  (See Tr. 26.)  Second, in assessing Plaintiff's ability to engage in daily activities, the ALJ stated that "[Plaintiff] reports difficulty driving and that someone has to be around her, but she relates this primarily to her pseudoseizures" (id. (emphasis added)), indicating that the ALJ discounted the effect of Plaintiff's pseudoseizures on her ability to engage in daily activities.  As such, the ALJ erred by evaluating Plaintiff's pseudoseizures as a strictly physical impairment, rather than as a psychiatric somatoform disorder with physical manifestations.  See Rose v. Berryhill, No. 2:16-CV-12369, 2017 WL 6506465, at *10 (S.D.W. Va. Sept. 18, 2017) (unpublished)

("Had the ALJ considered [the c]laimant's seizures through the lens of a somatoform disorder [under Listing 12.07], the ALJ may have reevaluated the severity of [the c]laimant's deficits under the paragraph B criteria." (emphasis added)), recommendation adopted, 2017 WL 6503640 (S.D.W. Va. Dec. 19, 2017) (unpublished).

However, the ALJ's error in failing to analyze Plaintiff's pseudoseizures under Listing 12.07 remains harmless under the circumstances presented here. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Although Plaintiff attacks the ALJ's finding of mild limitation in Plaintiff's ability to perform daily activities by pointing to her own testimony that she had not driven a car since 2014 due to her seizures (Docket Entry 13 at 8 n.2 (citing Tr. 26, 49)), the ALJ expressly found that Plaintiff continued to ride motorcycles with her boyfriend and drove herself to the hospital in 2016 (see Tr. 26, 29; see also Tr. 569, 602). Plaintiff also emphasizes her reports on August 23, 2016, to clinicians at Daymark Recovery Services that she feared showering alone or staying at home by herself (see Docket Entry 13 at 8 n.2 (citing Tr. 586)), but the ALJ found that Plaintiff had also reported to Daymark "being able to handle activities of daily living without assistance" (Tr. 26; see also Tr. 576). Moreover,

Plaintiff's arguments rely exclusively on her own statements, but the ALJ found Plaintiff's statements not entirely consistent with the evidence of record (see Tr. 28), and Plaintiff does not attack the ALJ's assessment of her subjective symptom reporting (see Docket Entry 13). In other words, her "argument [wa]s based upon accepting her allegations as to the frequency and severity of her seizure activity as fully credible, which the ALJ declined to do." Bowden v. Commissioner of Soc. Sec., No. 97-1629, 173 F.3d 854 (table), 1999 WL 98378, at *8 (6th Cir. Jan. 29, 1999) (unpublished).

Furthermore, Plaintiff has raised no arguments concerning the ALJ's findings with respect to social functioning, concentration, persistence, or pace, or episodes of decompensation, neither disputing the ALJ's characterization of the evidence he relied upon in analyzing those areas of function, nor explaining how other evidence specifically would undermine the ALJ's findings. (See Docket Entry 13 at 5-11.) That failure precludes relief. See Norwood v. Astrue, No. 3:11-CV-398, 2012 WL 4450887, at *7 (E.D. Tenn. Aug. 31, 2012) (unpublished) (finding that ALJ erred by not specifically addressing Listing 12.07 with respect to the plaintiff's pseudoseizures, but deeming error "harmless" where "[t]he ALJ found that the Plaintiff did not me[e]t the 'B' criteria contained in Listing[s] 12.06 and 12.04 . . . [and t]he [p]laintiff ha[d] not directed the [c]ourt to any evidence that would undermine

the findings the ALJ made with regard to the 'B' criteria"), recommendation adopted, 2012 WL 4442667 (E.D. Tenn. Sept. 25, 2012) (unpublished); Walkingstick v. Astrue, No. 10-CV-713-FHM, 2012 WL 966505, at *2 (N.D. Okla. Mar. 21, 2012) (unpublished) (finding the plaintiff's argument "correct that the ALJ did not perform an analysis of [the p]laintiff's seizure disorder as a mental impairment" under Listing 12.07, but declining remand where the "[p]laintiff's argument . . . d[id] not contain any references to the record that demonstrate[d] the likelihood of a different outcome").

Ultimately, Plaintiff bears the burden of proving that her impairments meet or medically equal a listing, see Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986), and, on judicial review, it does not suffice to provide "ample evidence" that a particular listing applies; rather, Plaintiff must show "ample evidence" that her condition meets that listing, Cook, 783 F.2d at 1172. Plaintiff here has not established grounds for reversal or remand, because the evidence upon which she relies shows neither that "ample evidence" existed that her impairment met or equaled Listing 12.07, Cook, 783 F.2d at 1172, nor that remand for an express discussion of Listing 12.07 by the ALJ would lead to a different outcome in her case, Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is

reason to believe that the remand might lead to a different result").

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment Reversing or Remanding for Rehearing the Commissioner's Final Administrative Decision (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 26, 2019