IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KIMBERLY ZISSETTE WHEELER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| ANDREW SAUL, Commissioner of ) | 1:17CV1074 |
| Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

On March 26, 2019, in accordance with 28 U.S.C. § 636(b), the Memorandum Opinion and Recommendation of the United States Magistrate Judge ("Recommendation") was filed and served on the parties in this action. [Docs. #19, 20.] The Magistrate Judge recommended affirming the Commissioner's decision finding no disability, denying Plaintiff's Motion for Summary Judgment Reversing or Remanding for Rehearing the Commissioner's Final Administrative Decision [Doc. #11], and granting Defendant's Motion for Judgment on the Pleadings [Doc. #17]. Plaintiff Kimberly Zissette Wheeler timely objected. (Obj. to Recommended Ruling ("Obj.") [Doc. #21].) The Court has reviewed de novo the portions of the Recommendation to which Wheeler has objected. For the reasons explained

---

[1] Andrew Saul, Commissioner of Social Security, is substituted for Nancy A. Berryhill, then-Acting Commissioner of Social Security at the time Wheeler filed the instant action. See Fed. R. Civ. P. 25(d).

below, the Recommendation is accepted in part, and declined in part as to its finding of harmless error and dispositive recommendations.

The Administrative Law Judge ("ALJ") found that only Wheeler's pseudoseizures was a severe impairment, and that none of her impairments met the severity of one of the listed impairments in 20 C.F.R., Pt. 404, Subpt. P., App'x 1. (Tr.[2] at 25-27.) Based on her residual functional capacity, the ALJ concluded that Wheeler was capable of performing her past relevant work and was, therefore, not disabled. (Id. at 27-31.)

In her brief in support of her motion, Wheeler argued two bases on which to reverse the Commissioner's decision or remand for rehearing: (1) the Appeals Council's failure to consider additional opinion evidence and (2) the ALJ's failure to address whether Wheeler meets Listing 12.07. (See Pl.'s Br. in Supp. of Her Mot. for Summ. J. ("Br. in Supp.") [Doc. #13].) The Magistrate Judge found that Wheeler's first assignment of error failed, (see Recommendation at 8-14), a conclusion to which Wheeler does not object, (see generally Obj.). However, the Magistrate Judge found that portions of the ALJ's decision "lend credence to [Wheeler's] argument that the ALJ did not consider [her] pseudoseizures in his evaluation of the paragraph B criteria", but the error was "harmless under the circumstances presented here." (Recommendation at 21, 22.) Wheeler objects and maintains that the ALJ's failure "to adequately explain or even address listing

---

[2] All references to "Tr." are to the Administrative Record.

2

12.07 in his decision, despite substantial evidence showing Ms. Wheeler met the Listing . . . is an error of law". (Obj. at 4.) Specifically, she argues that she met the requirements of Listing 12.07, as that Listing existed at the time of the ALJ's decision, and that because the ALJ's opinion is "devoid of reasoning" as to why he believed Wheeler did not meet a Listing, meaningful judicial review is precluded. (Id. at 4-13.)

Steps two and three of the ALJ's five-step sequential evaluation process are at the heart of Wheeler's challenge. As the regulations provide, in relevant part, an ALJ considers at step two "the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities". 20 C.F.R. § 404.1520(c). At step three, the ALJ "also consider[s] the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant has "an impairment(s) that meets or equals one of [the] listings in appendix 1 of [subpart P] and meets the duration requirement", the claimant will be found disabled. Id. If the claimant's "impairment(s) does not meet or equal a listed impairment, [the ALJ] will assess and make a finding about [the claimant's] residual functional capacity". 20 C.F.R. § 404.1520(e).

Here, at step two, the ALJ found Wheeler's severe impairment to be pseudoseizures, because they "cause[] more than minimal functional limitations", while her "medically determinable mental impairments of conversion disorder, depressive disorder, post-traumatic stress disorder ('PTSD') and anxiety,

3

considered singly and in combination, do not cause more than minimal limitations in [Wheeler's] ability to perform basic mental work activities and are therefore nonsevere." (Id. at 25, 26.) He arrived at this latter conclusion after "consider[ing] the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments", "known as the 'paragraph B' criteria" – activities of daily living, social functioning, concentration, persistence, or pace, and decompensation. (Id. (emphasis added).)

At step three, the ALJ found that Wheeler did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in appendix 1. (Id. at 27.) The entirety of his explanation is as follows:

> In reaching this conclusion, the undersigned has reviewed the claimant's impairments using the Listing of Impairments contained in 20 CFR Part 404, Appendix 1 to Subpart P. The current evidence, however, fails to establish an impairment that is accompanied by signs that are reflective of listing-level severity. Also, none of the claimant's treating or examining physicians of record has reported any of the necessary clinical, laboratory, or radiographic findings specified therein.[3]

(Id.)

Wheeler contends that she meets Listing 12.07 for Somatoform Disorders, as it existed when the ALJ issued his opinion. (Br. in Supp. at 6-7.) Yet, according to Wheeler, "[t]here is no evidence the ALJ considered Listing 12.07 at all." (Id. at

---

[3] This final requirement does not appear in Listing 12.07, as it existed at the time. However, more generally, Listing 12.00 referred to "medical evidence consisting of . . . laboratory findings" and "clinical examination".

4

8.) Although "the ALJ considered the 'paragraph B' criteria in evaluating Mrs. Wheeler's conversion disorder, depressive disorder, post-traumatic stress disorder and anxiety," she argues that he "failed to address how [her] pseudoseizures affected these broad functional areas or whether, given her pseudoseizures, [her] paragraph B' criteria would have been rated differently." (Id. at 8 n.2.) Wheeler contends "this court is left to wonder whether the ALJ took [her] pseudoseizures into account, an omission which precludes 'meaningful review.'" (Id.)

"In analyzing the evidence at step three, an ALJ is not required to explicitly identify and discuss every possible listing". Ollice v. Colvin, No. 1:15CV927, 2016 WL 7046807, at *3 (M.D.N.C. Dec. 2, 2016), adopted, slip op. (M.D.N.C. Jan. 10, 2017). "[H]owever, he must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination, particularly where the 'medical record includes a fair amount of evidence' that a claimant's impairment meets a disability listing." Id. (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). In Radford, the ALJ found the claimant to have two severe impairments, but neither qualified as an impairment under Listings 1.04A or 3.02 or Listing sections 1.00, 3.00, 11.00, or 13.00. 734 F.3d at 291-92. "The ALJ provided no basis for his conclusion, except to say that he had 'considered, in particular,' the listings above, and had noted that state medical examiners had also 'concluded after reviewing the evidence that no listing [was] met or equaled.'" Id. at 292 (alteration in Radford). "This insufficient legal analysis [made] it impossible for a reviewing court to evaluate whether substantial evidence support[ed] the

5

ALJ's findings." Id. at 295 (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) as "reversing and remanding when ALJ 'failed to compare [the claimant's] symptoms to the requirements of any of the four listed impairments, except in a very summary way[]'").

However, "'[a] cursory explanation' at step three may prove 'satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record[,] there is substantial evidence to support the conclusion[,]'" and there is "'a sufficient discussion of the evidence and explanation of [the ALJ's] reasoning such that meaningful judicial review is possible.'" Ollice, 2016 WL 7046807, at *3 (quoting Meador v. Colvin, No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015 (citing Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011))).

Before examining the ALJ's finding at step three, it is necessary to give context to two of Wheeler's impairments – conversion disorder and pseudoseizures. A diagnosis of conversion disorder "requires that the symptom is not explained by neurological disease." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 319 (5th ed. 2013) ("DSM-V"). Motor symptoms of conversion disorder "include weakness or paralysis; abnormal movements, such as tremor of dystonic movements; gait abnormalities; and abnormal limb posturing." Id. "Episodes of abnormal generalized limb shaking with apparent impaired or loss of consciousness may resemble epileptic seizures (also called *psychogenic* or *non-epileptic seizures*)." Id. Dorland's Illustrated

Medical Dictionary defines psychogenic as "produced or caused by psychological factors[,] [s]ee also *psychosomatic*". Dorland's Illustrated Medical Dictionary 1549 (32d ed. 2012). Pseudoseizure is defined as "an attack resembling an epileptic seizure but being a type of conversion disorder . . . ." Id. at 1546.

The Social Security Neurological Disorders Listing explains that "psychogenic seizures and pseudoseizures [are evaluated] under the mental disorders body system, 12.00." 20 C.F.R., Pt. 404, Subpt. P., App'x 1, § 11.00H1; see also id. § 11.004e. Accordingly, Listing 12.07 for Somatoform Disorders, as it existed at the time of the ALJ's decision, provided the evaluation for "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R., Pt. 404, Subpt. P., App'x 1, § 12.07 (DI 34132.011 (effective Sept. 29, 2016 – Jan. 16, 2017)). An impairment was sufficiently severe to meeting Listing 12.07 if it was "A. Medically documented by evidence of one of the following: . . . 2. Persistent nonorganic disturbance of one of the following: . . . e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, . . .) . . . AND" it "B. Result[s] in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." Id.

In other words, the DSM-V describes psychogenic seizures as being among the symptoms of conversion disorder. Dorland's defines pseudoseizures as a type

7

of conversion disorder. Listing 12.07 includes psychogenic seizures as part of the severity analysis for somatoform disorders. Yet, the ALJ distinguished pseudoseizures from Wheeler's conversion disorder and apparently assessed them separately. (See Tr. at 25 ("The claimant has the following severe impairment: pseudoseizures"), 26 ("The claimant's medically determinable mental impairments of conversion disorder, depressive disorder, post-traumatic stress disorder ('PTDS') and anxiety, considered singly and in combination . . . [are] nonsevere." . . . "In th[e] area [of activities of daily living], . . . [t]he claimant reports difficulty driving and that someone has to be around her, but she relates this primarily to her pseudoseizures.").)

Under the circumstances here, this distinction coupled with the ALJ's conclusory analysis at step three impedes meaningful review of his step three decision. There is a fair amount of evidence in the medical record that Wheeler's impairments met Listing 12.07. (See, e.g., Tr. at 309, 316, 395-98, 407, 409, 412, 413, 415, 416-19, 433, 435, 446, 457, 494, 500, 501, 503, 523, 530, 454, 568-69, 577, 586, 588.) This Court is not suggesting that this Listing was met, but the law requires the ALJ to provide a full explanation of why he concluded none of Wheeler's impairments met this Listing or any other relevant Listing. He did not do this.

Unfortunately, the decision as a whole cannot save this omission. The ALJ completed part of the step three Listing analysis at step two when he assessed the impact of Wheeler's medically determinable mental impairments on

8

her activities of daily living, social functioning, concentration, persistence, or pace, and decompensation. And, he found they only caused minimal limitations. However, that analysis in step two is insufficient to explain his step three conclusion because he did not include Wheeler's pseudoseizures in his paragraph B analysis at step two.

The ALJ's residual functional capacity assessment further discusses Wheeler's pseudoseizures, and the Magistrate Judge found the ALJ's error at step three harmless "under the circumstances here." (Recommendation at 22.) The Recommendation notes that the evidence Wheeler cites in support of Listing 12.07 relates solely to her activities of daily living and is comprised of her own statements which the ALJ found not entirely consistent with the record evidence. (Id. at 22-24.) Although the Recommendation addresses each of Wheeler's arguments on this point in detail with citations to the record and factual and legal analysis, the ALJ's error is not harmless. This is so because of the evidence to which Wheeler cites and because of the bases on which the ALJ discounts the severity of Wheeler's impairments. For example, although she reported to Daymark in June 2016 that she was not comfortable driving due to her seizures, she did drive herself to the hospital emergency room in October 2016 for treatment for a days-long headache that rated a 10 out of 10 for pain. (Tr. at 568, 599, 602.) She used to ride on the back of her boyfriend's motorcycle, but by October 2016 had stopped because of her fear of having a seizure. (Tr. at 50.)

9

In support of his determination that "more restrictive limitations [than those imposed in the residual functional capacity] are not supported by the record", the ALJ explained,

> Although the claimant reports problems with vision, a treatment note indicates that she drove herself to the hospital. This suggests that her vision does not impose significant work-related limitations. Given that she drove herself to get medical treatment while having a headache, this evidence also suggests that the claimant's headaches are not as intense, persistent, and limiting as alleged. Moreover, the claimant reports not driving, yet she was noted to drive in October 2016. She told a medical provider in June 2016 that she continues riding motorcycles with her boyfriend, despite some limitations due to seizures. That she drives and rides motorcycles suggests that the claimant's allegations regarding her symptoms are not reliable and that she retains more functional ability than alleged.

(Tr. at 29.) Yet, the fact that Wheeler believed she required medical treatment and chose to drive herself to the emergency room on one occasion does not mean that she can drive herself on a daily basis as part of her activities of daily life. Moreover, while riding on the back of a motorcycle is probably not advisable with her impairments, she was not driving the motorcycle and gave up riding because of her seizures.

Because the ALJ's "decision does not include sufficient explanation and analysis to allow meaningful judicial review of [his] listing determination, remand is appropriate." Ollice, 2016 WL 7046807, at *3 (citing Radford, 734 F.3d at 295).

For the reasons explained in this Memorandum Order, the Recommendation is accepted in part, and declined in part as to its finding of harmless error and dispositive recommendations. IT IS HEREBY ORDERED that Plaintiff's Motion for

10

Summary Judgment Reversing or Remanding for Rehearing the Commissioner's Final Administrative Decision [Doc. #11] be GRANTED in so far as her request to remand the matter, Defendant's Motion for Judgment on the Pleadings [Doc. #17] be DENIED, and this matter be REMANDED for further proceedings consistent with this Order.

This the 20th day of September, 2019.

/s/ N. Carlton Tilley, Jr.<br>Senior United States District Judge